**ROBERTS & KEHAGIARAS LLP**
THEODORE H. ADKINSON, ESQ. (State Bar No. 167350)
tha@tradeandcargo.com
ANDREW D. KEHAGIARAS, ESQ. (State Bar No. 207767)
adk@tradeandcargo.com
One World Trade Center, Suite 2350
Long Beach, CA 90802
Telephone: (310) 642-9800
Facsimile: (310) 868-2923

Attorneys for plaintiff
MINSIK LEE dba G&T APPARELS IMPORT CO.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MINSIK LEE dba G&T APPARELS IMPORT COMPANY,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>VELOCITY JEANS EGYPT COMPANY E.S.C.,<br><br>　　　　Defendant. | **CASE NO.** 2:17-cv-315<br><br>IN ADMIRALTY<br><br>**VERIFIED COMPLAINT** |

   COMES NOW plaintiff MINSIK LEE dba G&T APPARELS IMPORT CO. ("G&T") and alleges:

---

## I. JURISDICTION, VENUE AND PARTIES

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves claims for the breach of a maritime contract *i.e.* a bill of lading and contract for the purchase and ocean transportation of merchandise from a foreign jurisdiction into the United States. This case also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333, and is brought under the provision of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims.

2. At all times material herein, Minsik Lee is an individual doing business as G&T Apparels Import Co., and is a resident of California.

3. At all times material herein, G&T is informed and believes, and thereon alleges, that defendant VELOCITY JEANS EGYPT COMPANY E.S.C. ("VELOCITY") was a business entity organized and existing under the laws of Egypt with its principle place of business in Egypt, and is not registered to do business in California.

4. The jurisdiction of this Court is founded on the presence within the District of property of the Defendants that may be attached by process of maritime attachment and garnishment under the provisions of Rule B of the Supplemental

Rules for Certain Admiralty and Maritime Claims, as pled in Section III of this Verified Complaint.

## II. GENERAL ALLEGATIONS

5. On or about March 29, 2016, G&T and VELOCITY contracted for the purchase and sale of clothing merchandise (the "Cargo") to be manufactured in Egypt and Ethiopia, and to be transported by ocean transport from foreign ports to Long Beach, California. A true and correct copy of the purchase order for this original agreement is attached to this complaint as Exhibit A.

6. On or about June 20, 2016, G&T and VELOCITY revised the March 29 purchase order. A true and correct copy of the purchase order for this revised agreement is attached to this complaint as Exhibit B.

7. On or about November 4, 2016, G&T and VELOCITY revised the March 29 purchase order. A true and correct copy of the purchase order for this revised agreement is attached to this complaint as Exhibit C.

8. Pursuant to the terms of the agreements between G&T and VELOCITY, G&T made payment for 50% for the Shipment, consisting of $202,107.11 by wire transfer from G&T to VELOCITY. True and correct copies of the confirmation of wire transfers (or "TT" payments) are attached as Exhibit D.

ROBERTS & KEHAGIARAS LLP
www.tradeandcargo.com

9. After payment of 50% of the purchase price for the Shipment, the product was loaded aboard the M/V GUTHORM MAERSK, Voyage 647E, for transport from Port Said East, Egypt, to Long Beach, California. A true and correct copy of a draft bill of lading for this shipment is attached to this declaration as Exhibit E.

10. Shortly after the 50% payment was made on the Shipment and the sailing of the GUTHORM MAERSK from Egypt, G&T discovered facts indicating that the products being manufactured by VELOCITY may not meet commercially acceptable standards.

11. I then traveled to VELOCITY's Ethiopia's factory to personally inspect the product scheduled for the next shipment. I discovered that the product was in fact below commercially acceptable standards, and immediately informed VELOCITY of the problems and unacceptability of the product.

12. After further negotiations, VELOCITY agreed to a modification of the terms of the contract to allow for sale of the Shipment upon full payment of $404,679.29, constituting the full value of that shipment, in exchange for delivery of the original bills of lading and shipping documents to allow G&T to take possession of the Shipment upon arrival in Long Beach.

13. The terms of the modified contract were memorialized in an e-mail exchange between G&T and the founder of VELOCITY,

ROBERTS & KEHAGIARAS LLP
www.tradeandcargo.com

Mr. Siddharth Sinha.  In that agreement, the two parties agreed to separate out the Egypt and Ethiopia shipments, allowing for payment for and receipt of the Egypt goods immediately:

> It is absolutely not our intention to ask you to pay for any goods that are defective.  We will never do that.  We are asking you to pick up goods that are commercially acceptable under 2.5AQL.  If you ask for my idea I think the best way forward will be as follows:
>
> **Let us keep Egypt & Ethiopia as separate business transactions.**
>
> Egypt
> 1) You will make Egypt payment by 31st dec.
> 2) You can inspect & sell the Egypt goods quickly coz [sic] we know they are good.  I have looked at them myself.
> 3) Give us the approval for T1010 so we can start the new style production imm.
> 4) We will produce the balance quantity in Egypt on a mutually agreed time & there by [sic] close the Egypt production as planned.  Moving our full focus on Ethiopia.

A true and correct copy of the confirming e-mail dated December 23, 2016, is found at page 8 of the email exchange attached as Exhibit F (Emphasis added).

ROBERTS & KEHAGIARAS LLP
www.tradeandcargo.com

14. G&T accepted the proposed terms by e-mail on December 25, 2016, in which I requested the original bill of lading and shipping documents, and, in exchange, promising to wire the balance of the purchase price for the Egypt goods:

> Attn: Siddarth
>
> Well ntd. Pls mail me the copy of the original B/L and the shipping documents included visa stamped invoice imdtly. I will TT [wire] the balance once I get the documents.
>
> B/Rgds Minsik
>
> (Exhibit F, p. 9)

15. On December 27, 2016, Mr. Sinha sent me an e-mail with the requested documents, including a copy of the original bill of lading. (See Exhibit F, p. 9) A true and correct copy of the original bill of lading received as an attachment to that e-mail is attached to this declaration as Exhibit G.

16. Upon receipt of that e-mail confirmation of our agreement, I then wired the balance of the funds in three payments on December 29, 2016, January 2, 2017 and January 5, 2017. A true and correct copy of the Swift wire transfer confirmations are attached to this declaration as Exhibit H. This brought the total paid for the Shipment to $404,214.30, which represents the full purchase price for the Shipment.

17. The full purchase price for the Shipment is reflected in the Commercial Invoice issued by VELOCITY, a copy of which

was e-mailed to me by Mr. Sinha. A true and correct copy of the Commercial Invoice for the Shipment e-mailed to me by Mr. Sinha on December 27, 2016, in his confirming e-mail is attached to this declaration as Exhibit J.

18. Immediately following receipt of the wired funds, VELOCITY sent an e-mail to me indicating that although it had received the purchase funds for the shipment, VELOCITY would not be releasing the goods to me. That e-mail accused me of fraud, and instructed me to pay additional funds to compensate it for fabric that it had purchased. A true and correct copy of this e-mail is attached to this declaration as Exhibit K. This refusal to release the Shipment was in direct contravention to our prior agreement as memorialized in the e-mail exchange on December 23, 25, and 27 2016 attached in Exhibit F.

19. VELOCITY has since taken steps to have the Shipment be re-exported from Long Beach back to Egypt by contacting the carrier and requesting that the Shipment be re-exported. A true and correct copy of an email from the freight forwarder and NVOCC (Non-Vessel Operating Common Carrier), Damco USA Inc., indicating that the shipper had requested re-exportation of the Shipment is attached as Exhibit I, along with a translation of that document from Korean to English.

20. Based upon the January 10, 2017, e-mail refusing to release the Shipment to me, and the notification from the freight forwarder Damco USA Inc. stating that the shipper is

seeking to re-export the goods to Egypt, I believe that the goods are in danger of disappearing. This would prevent me from being able to levy the goods in the future, thereby preventing me from recovering my $404,671 paid to purchase the Shipment.

### III. APPLICATION FOR ATTACHMENT UNDER SUPPLEMENTAL ADMIRALTY RULE B

21. None of the Defendants are present or can be found in the District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Law Claims. See Attorney Declaration of Theodore H. Adkinson filed herewith. Notwithstanding, the Defendants have within the District tangible or intangible personal property in the hands of parties who may be named garnishees in the process of maritime attachment and garnishment consisting of debts, credits, or effects including but not limited to a cargo of clothing merchandise within container No. MSKU6871592, consisting of 1510 cartons of boy's t-shirts, held or which may be receivable by the said garnishees on behalf of the said Defendants.

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT AGAINST ALL DEFENDANTS

22. G&T hereby incorporates paragraphs 1 through 21, inclusive, of its complaint, as though fully set forth.

23. From March, 2016, through December, 2016, G&T and VELOCITY entered into a series of agreements and modifications

for the purchase and transportation of clothing merchandise, including the purchase and transportation of the Shipment of product from Egypt to Long Beach.

24. The terms of the modified contract call for payment of $404,679.24 by G&T to VELOCITY by wire transfer in exchange for the Shipment, and all necessary transportation documents, including the original bill of lading for the Shipment.

25. After said payment was completed on or about January 8, 2017, VELOCITY breached the contract by failing to produce the original bill of lading and all other necessary transportation documents necessary for G&T to take possession of the Shipment despite demand.

26. VELOCITY is therefore in breach of the contract, which has caused damage to G&T in the amount of $404,679.24, plus costs and interest, no part of which has been paid despite demand therefore.

### SECOND CAUSE OF ACTION

### CONVERSION AGAINST ALL DEFENDANTS

27. Plaintiff incorporates by this reference each and every allegation in Paragraphs 1 through 26 and as through fully set forth herein.

28. Plaintiff has, and at all times herein relevant, had, an immediate and exclusive right to possession of the Shipment

based upon its payment of the purchase price of the Shipment pursuant to the terms of the contract.

29. Defendants have failed and refused to release the Shipment to Plaintiff and have failed to provide Plaintiff with the requisite documentation to obtain possession of the Shipment.

30. Defendants have wrongfully interfered with Plaintiff's possession of the goods and have converted the goods, and continue to convert the goods by, among other things: (a) failing and refusing to release to Plaintiff the Shipment, refusing to deliver documents necessary for Plaintiff to obtain possession of the Shipment, and taking steps to transport and secret the Shipment out of the country to prevent Plaintiff from obtaining possession of the Shipment.

31. As a direct and proximate result of the wrongful acts of VELOCITY, G&T has suffered damages, including, without limitation, the loss of value of the goods, costs, and attorneys' fees incurred in recovery of the goods, all in excess of $404,679.24, plus interest thereon in an amount subject to proof at trial.

32. The conduct of VELOCITY in taking, wrongfully possessing, and interfering with Plaintiff's possession and ownership of the goods, was malicious, fraudulent and oppressive and intended to harm Plaintiff and was in conscious

Z:\G and T Apparel Import Co\Federal pleadings\Complaint.doc    **COMPLAINT**

disregard of Plaintiff's rights in that, among other things, VELOCITY knowingly and wrongfully interfered with Plaintiff's possession of the goods by refusing to release the goods to Plaintiff and by attempting to secret the goods out of the country. Accordingly, Plaintiff is entitled to punitive damages against VELOCITY in an amount sufficient to punish and to deter it and others from engaging in similar conduct and to set an example.

### THIRD CAUSE OF ACTION
### RECOVERY OF POSSESSION OF PERSONAL PROPERTY AGAINST VELOCITY

33. Plaintiff incorporates by this reference each and every allegation in Paragraphs 1 through 32 and as through fully set forth herein.

34. Plaintiff has, and at all times herein relevant, had, an immediate and exclusive right to possession of all of the Shipment that Defendant VELOCITY shipped to G&T at G&T's request, upon G&T's payment of the purchase price of $404,214.30.

35. VELOCITY has wrongfully interfered with G&T's possession of and ownership interest in the goods, and has converted the goods, and continues to convert the goods by refusing to deliver the goods to G&T, refusing to deliver documentation to release the goods, including but not limited to the original bill of lading, and by taking actions

Z:\G and T Apparel Import Co\Federal pleadings\Complaint.doc **COMPLAINT**

inconsistent with G&T's ownership interest in the goods to have the goods re-exported against G&T's wishes and despite G&T's objections.

36. G&T has made demand to VELOCITY for the Shipment, which has been refused.

37. As a direct and proximate result of the wrongful acts of VELOCITY, G&T has suffered damages, including, without limitation, the loss of value of the goods, costs, and attorneys' fees incurred in recovery of the goods, all in excess of $404,679.24, plus interest thereon in an amount subject to proof at trial.

38. Plaintiff is entitled to immediate possession of said property and therefore seeks an order from this Court stating that Plaintiff is entitled to immediate possession of said property and directing the clerk to issue a writ of possession in favor of Plaintiff and against VELOCITY.

39. The conduct of VELOCITY in taking, wrongfully possessing, and interfering with Plaintiff's possession and ownership of the goods, was malicious, fraudulent and oppressive and intended to harm Plaintiff and was in conscious disregard of Plaintiff's rights in that, among other things, VELOCITY knowingly and wrongfully interfered with Plaintiff's possession of the goods by refusing to release the goods to Plaintiff and by attempting to secret the goods out of the

ROBERTS & KEHAGIARAS LLP
www.tradeandcargo.com

country. Accordingly, Plaintiff is entitled to punitive damages against VELOCITY in an amount sufficient to punish and to deter it and others from engaging in similar conduct and to set an example.

WHEREFORE, Plaintiff prays for damages against defendants, and each of them as follows:

1. That process in due form of law, according to the practice of this Court in matters of admiralty and maritime jurisdiction be issued against Defendant and said Defendant be cited to appear and answer the allegations of this Complaint;

2. That if Defendant cannot be found within this district, then all of its respective property within this district, including the cargo of clothing merchandise in the hands of person named as garnishees in the Process of Maritime Attachment and Garnishment be attached and seized pursuant to Supplemental Admiralty Rule B for Certain Admiralty and Maritime Claims;

3. That a judgment be entered against the Defendant in the sum of $404,679.24, plus costs and interest, and the proceeds of the assets attached be applied in satisfaction thereof;

4. For punitive damages sufficient to punish defendants and deter them from further wrongdoing and to set an example; and

///
///
///

5. For such other and further relief as the Court deems just and proper.

Dated: January 13, 2017  **ROBERTS & KEHAGIARAS LLP**

By: _/s/ Theodore H. Adkinson_____
Theodore H. Adkinson
Attorneys for plaintiff
Minsik Lee, dba G&T Apparels Import Co.

**VERIFICATION**

I, MINSIK LEE, pursuant to Section 1746 of Title 28 of the United States Code, hereby declare and say the following under penalty of perjury:

1. I have read the foregoing Verified Complaint and know the contents thereof; and

3. I believe the matters to be true based on my personal knowledge, documents and information obtained during the transactions detailed in the complaint.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

DATED: January 13, 2017

By: _____
Minsik Lee, dba
G&T Apparels Import Co.